# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| YANG WU INTERNATIONAL, INC., dba YW INTERNATIONAL, a corporation; and MAY PRODUCE CO., INC., a corporation <br><br> v. <br><br> LS & CX, LLC, a limited liability company dba JUSGO SUPERMARKET and dba ZTAO MARKETPLACE; JUSGO DULUTH, LLC, a limited liability company dba JUSGO SUPERMARKET and dba ZTAO MARKETPLACE; SAIGON MALL, LLC, a limited liability company trading as ZTAO MARKETPLACE; ZTAO GROUP HOLDING, LLC, a limited liability company; ZTAO MARKETPLACE DISTRIBUTION CENTER, LLC, a limited liability company; XUAN CHEN, an individual aka XUAN "DAVID" CHEN; JIAN LIU, an individual; ZHIYONG LI, an individual; SHENG LIN, an individual; XIN LIN, an individual | Civil Action No. 4:20-CV-312 <br> Judge Mazzant |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order or, Alternatively, for Preliminary Injunction (Dkt. #4). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

### **BACKGROUND**

Plaintiffs Yang Wu International, Inc., d/b/a YW International ("YW International"); and May Produce Co., Inc. ("May Produce") (collectively, "Plaintiffs") are in the business of selling perishable agricultural commodities, such as produce. Defendants LS & CX, LLC, d/b/a Jusgo Supermarket and also d/b/a Ztao Marketplace ("Jusgo Plano"); Jusgo Duluth, LLC, d/b/a Jusgo Supermarket and also d/b/a Ztao Marketplace ("Jusgo Duluth"); Ztao Group Holding, LLC ("Ztao

Group"); and Ztao Marketplace Distribution Center, LLC ("Ztao Marketplace") (collectively, "Business Entity Defendants") are in the business of purchasing perishable agricultural commodities and reselling them to their customers.

Between 2018 and 2019, Plaintiffs sold perishable agricultural commodities to Business Entity Defendants and never received payment for those commodities. Specifically, in a series of transactions between December 2018 and November 2019, May Produce sold and shipped them perishable agricultural commodities worth $161,034.80. Likewise, between March and August 2019, YW International sold and shipped them $209,372.85 worth of perishable agricultural commodities. Plaintiffs made multiple requests to Business Entity Defendants to pay the amounts owed to them. But, despite repeated demands by Plaintiffs, Business Entity Defendants failed to pay the amounts due to Plaintiffs.

Based on this set of facts, Plaintiffs filed suit in this Court on April 14, 2020, alleging that Business Entity Defendants committed breach of contract and violated the Perishable Agricultural Commodities Act of 1930 ("PACA") (Dkt. #1). That same day, Plaintiffs filed a motion for a temporary restraining order against Business Entity Defendants (Dkt. #4). The Temporary Restraining Order ("TRO") was issued for a fourteen-day period, and the show cause hearing was set for April 30, 2020 (Dkt. #17).

On April 30, 2020, the Court held its show cause hearing, where it heard the argument of the parties. After the hearing, the Court found good cause to extend the TRO an additional 14 days, so that the Court could write an opinion regarding the preliminary injunction (Dkt. #25).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer

irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

Plaintiffs ask the Court to enjoin Business Entity Defendants from dissipating Plaintiffs' PACA trust assets and, further, to freeze PACA trust assets worth $475,225.36.[1] Plaintiffs maintain that they have established that they can show all four required elements to obtain a preliminary injunction. The Court addresses the four elements in turn.

**I.     Substantial Likelihood of Success on the Merits**

Plaintiffs argue that they have a substantial likelihood of success on the merits of their claims under PACA. The Court agrees.

"PACA is a tough law." *Golman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000). The law was designed to protect not only consumers but also the "producers of perishable agricultural products, most of whom entrust their products to a buyer who

---

[1] This amount consists of $209,372.85 in principal owed to YW International; $161,034.80 in principal owed to May Produce; contractual finance charges in the amount of $85,040.71; reasonable attorneys' fees of $19,377.00; and filing fees of $400.00 (Dkt. #4 at pp. 3–4; Dkt. #4, Exhibit 1).

3

may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing." *Id.*

Under PACA, "when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created upon acceptance of the commodities." *Id.* at 350. Furthermore, the statute states:

> "[A]ll inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities" until the buyer makes the required payment. 7 U.S.C. § 499e(c)(2). The trust preserves the seller's rights, and the seller "obtains a priority interest in the trust assets held by the [buyer]." *Golman-Hayden*, 217 F.3d at 350. A seller, however, loses the benefit of the trust unless it has served written notice on the buyer of the seller's intent to preserve the trust benefits. PACA provides that a seller "may use ordinary and usual billing or invoice statements to provide notice of the [seller's] intent to preserve the trust." 7 U.S.C. § 499e(c)(4).

*Hardie's Fruit & Vegetable Co., LP v. BIMC, LP*, No. 3:18-CV-1454-D, 2018 WL 3302733, at *2 (N.D. Tex. July 5, 2018). To provide notice using a billing or invoice, it must contain the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

Plaintiffs established that they have a substantial likelihood of success on the merits. As an initial matter, the Court finds that Plaintiffs established that their PACA claims apply to all Business Entity Defendants. To start, PACA applies to Jusgo Plano and Jusgo Duluth because they are dealers of perishable agricultural commodities (Dkt. #4, Exhibit 2 at p. 2; Dkt. #4, Exhibit 3 at pp. 3, 67–74). 7 U.S.C. §§ 499a(b)(6) (stating that a "dealer" is an entity engaged in buying wholesale perishable agricultural commodities). Plaintiffs also established that their claims

4

apply to Ztao Marketplace and Ztao Group (collectively, "Ztao") because they are jointly liable as alter egos of Jusgo Plano and Jusgo Duluth (collectively "Jusgo").

"[T]he alter ego doctrine allows the imposition of liability of a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business conduit." *Nichols v. Pabtex, Inc.*, 151 F. Supp. 2d 772, 780 (E.D. Tex. 2001) (citations omitted) (noting that the alter ego doctrinal considerations are the same regardless of whether the companies have a parent-subsidiary or sister-sister relationship). The doctrine applies when there is such unity between corporations that the "separateness of the . . . corporations has ceased" and holding just one corporation liable "would result in injustice." *Id*. (citation omitted). "Alter ego is demonstrated 'by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive between [the] corporations.'" *Id*. at 781 (citation omitted). Keeping in mind that "no one factor is determinative," the Fifth Circuit enumerated a laundry list of factors to be used in determining whether a company is an alter ego of another. *Id*. (citing *United States v. Jon–T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir. 1985). These factors include, among others: (1) one company pays the salaries and expenses of the other; (2) one company uses the other company's property as its own; and (3) the daily operations of the corporations are not kept separate. *Jon–T Chems., Inc.*, 768 F.2d at 691–692.

After analyzing the Fifth Circuit's list of factors, the Court finds that the separateness of Jusgo and Ztao has ceased; therefore, Jusgo and Ztao are operating as alter egos of each other. First, Ztao routinely paid Jusgo's expenses when Ztao paid Jusgo's debts that were owed to Plaintiffs (Dkt. #4, Exhibit 1 at pp. 2–4; Dkt. #4, Exhibit 2 at pp. 5, 19–69; Dkt. #4, Exhibit 3 at pp. 5–6, 58–63). Second, Ztao used Jusgo's property as its own. Specifically, the companies used the same property because Ztao continuously used the same physical addresses as Jusgo (Dkt. #4,

Exhibit 1 at p. 4; Dkt. #4, Exhibit 2 at p. 5; Dkt. #4, Exhibit 3 at pp. 4, 58–59). Third, the daily operations of Ztao were not kept separate from those of Jusgo. To start, both Jusgo Plano and Jusgo Duluth generically called themselves "Jusgo Supermarkets"; and, Business Entity Defendants, themselves, used the names "Jusgo Supermarket" and "Ztao Marketplace" interchangeably (Dkt. #4, Exhibit 1 at p. 3; Dkt. #4, Exhibit 2 at p. 3; Dkt. #4, Exhibit 3 at p. 3). Furthermore, a single buyer—known as "Tha"—was used to purchase Plaintiffs' goods on behalf of Jusgo and Ztao Marketplace (Dkt. #4, Exhibit 1 at p. 3; Dkt. #4, Exhibit 2 at pp. 4–5; Dkt. #4, Exhibit 3 at p. 4). Tha instructed Plaintiffs to send the invoices for produce to the addresses shared by Ztao and Jusgo (Dkt. #4, Exhibit 1 at p. 4; Dkt. #4, Exhibit 2 at p. 5; Dkt. #4, Exhibit 3 at pp. 4, 58–59). Tha also directed Plaintiffs to issue the invoices to either "Jusgo Supermarket" or "Ztao Marketplace" (Dkt. #4, Exhibit 1 at p. 3; Dkt. #4, Exhibit 2 at p. 5; Dkt. #4, Exhibit 3 at p. 4). Similarly, Tha ordered Plaintiffs to email all billing statements and open invoices for Jusgo to email addresses with the domain names of "ztaomarketplace.com" and "ztaogroup.com" (Dkt. #4, Exhibit 1 at p. 4; Dkt. #4, Exhibit 3 at pp. 5, 56–57). Thus, based on these factors, the Court finds that there is a unity between Ztao and Jusgo such that Ztao is operating as the alter ego of Jusgo. For this reason, Ztao Marketplace and Ztao Group are liable for the actions of Jusgo Plano and Jusgo Duluth. Therefore, Plaintiffs have established that their PACA claims apply to Business Entity Defendants.

Furthermore, Plaintiffs proved that Business Entity Defendants purchased Plaintiffs' perishable agricultural commodities (Dkt. #4, Exhibit 3 at p. 5; Dkt. #4, Exhibit 4 at p. 4). Moreover, each of Plaintiffs' invoices to Business Entity Defendants contained the statutory statement, giving them notice of Plaintiffs' intent to preserve the PACA trust (Dkt. #4, Exhibit 3 at pp. 6, 19–101; Dkt. #4, Exhibit 4 at pp. 4, 18–55). Plaintiffs also proved that Business Entity

Defendants accepted shipments of perishable agricultural commodities from Plaintiffs worth $370,407.65 but that they never paid for the products (Dkt. #4, Exhibit 3 at p. 5; Dkt. #4, Exhibit 4 at p. 4). As such, Plaintiffs have established that Business Entity Defendants are subject to PACA and that Plaintiffs are the beneficiaries of a PACA trust. Plaintiffs have further proven that they are entitled to recover trust assets under PACA—for the sums owed by Business Entity Defendants in connection with the unpaid commodities. Thus, Plaintiffs have shown a substantial likelihood of success on the merits on their claims under PACA.

## II. Substantial threat of Irreparable Harm

Plaintiffs must demonstrate they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

Here, Plaintiffs are likely to suffer irreparable harm without a preliminary injunction. "Several federal courts have ruled that '[PACA] trust dissipation can satisfy this factor if, absent such relief, ultimate recovery is rendered unlikely.'" *Hardie's Fruit & Vegetable Co., LP*, 2018 WL 3302733, at *3 (citing *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 141 (3d Cir. 2000); *Eddy Produce LLC v. Sutton Fruit & Vegetable Co.*, No. 3:12-CV-316-N, 2012 WL 487050, at *3 (N.D. Tex. Feb. 14, 2012)).

Plaintiffs presented evidence that Business Entity Defendants have dissipated trust assets. To start, both Plaintiffs submitted affidavits stating that Business Entity Defendants have failed and refused to pay Plaintiffs for the amounts owed (Dkt. #4, Exhibit 3 at pp. 10–11; Dkt. #4,

Exhibit 4 at pp. 10–11). These assertions were echoed in the affiants' testimony at the TRO hearing. Importantly, PACA requires that Business Entity Defendants hold the proceeds from the sale of Plaintiffs' perishable agricultural commodities in a trust. 7 U.S.C. § 499e(c)(2). However, Defendant Xuan "David" Chen ("Chen")—representative of Business Entity Defendants—testified that they would not do so at the TRO hearing. Indeed, Chen stated that Business Entity Defendants had the amount to cover the trust assets; but, if the Court did not freeze the amounts owed to Plaintiffs, that money would be paid to Business Entity Defendants' other creditors—not Plaintiffs. Thus, Chen admitted that Business Entity Defendants would dissipate Plaintiffs' trust assets. Accordingly, Plaintiffs have proven that they are likely to suffer irreparable harm due to Business Entity Defendants' dissipation of trust assets.

### III. Balance of Hardships

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). In other words, this element "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. 2018).

Business Entity Defendants assert that they will face a severe hardship if their accounts are frozen. In that case, Business Entity Defendants contend they will be unable to pay other creditors. Thus, according to Business Entity Defendants, they could not continue operating their business; and, the hardships against Business Entity Defendants would significantly outweigh those suffered

by Plaintiffs. While the Court is sympathetic to Business Entity Defendants' situation, the Court finds that the hardships still weigh in favor of granting the preliminary injunction.

As the Court indicated, Plaintiffs are likely to suffer irreparable harm without the Court entering a preliminary injunction. Furthermore, PACA requires that Business Entity Defendants may only use the trust assets to pay Plaintiffs for the perishable agricultural commodities that they purchased. Thus, Business Entity Defendants are barred from using the PACA trust assets for any other purpose. "In this way, Congress has already contemplated potential harms to defendants in these cases." *Hardie's Fruit & Vegetable Co., LP*, 2018 WL 3302733, at *3 (citing *Sanzone Brokerage, Inc. v. J&M Produce Sales, Inc.*, 547 F. Supp. 2d 599, 603 (N.D. Tex. 2008)). The Court therefore finds that the balance of hardships favors granting an injunction.

### IV. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger*, 465 U.S. at 312). "Congress has specifically provided that protecting the interest of produce sellers and ensuring they are paid for their produce is in the public interest." *Sanzone Brokerage, Inc.*, 547 F. Supp. 2d at 603. PACA itself states that:

> [A] burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants . . . , who have not made payment for perishable agricultural commodities purchased, . . . encumber or give lenders a security interest in, such commodities, . . . and any . . . proceeds from the sale of such commodities . . . , and that such arrangements are contrary to the public interest. This section is intended to remedy such a burden on commerce in perishable agricultural commodities and to protect the public interest.

7 U.S.C. § 499e(c)(1).

Thus, Business Entity Defendants' "alleged nonpayment . . . is a practice Congress specifically intended to prohibit by enacting PACA." *Eddy Produce LLC*, 2012 WL 487050, at *4.

9

Accordingly, the Court finds that the public interest is not disserved by the injunction.[2]

## CONCLUSION

It is therefore **ORDERED** Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order or, Alternatively, for Preliminary Injunction (Dkt. #4) is hereby **GRANTED**. Accordingly, Business Entity Defendants and their agents, bankers, subsidiaries, successors, assignees, principals, employees, officers, directors, shareholders, attorneys, and representatives are hereby **ENJOINED** during the pendency of this action from engaging in, committing, or performing directly and indirectly, any and all of the following acts:

1. Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable (including frozen) agricultural commodities, and/or receipts of payment for products sold prior to the date of this order and/or otherwise disposing of assets, books or funds;

2. Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates Plaintiffs' beneficiary interests in trust assets of the PACA [7 U.S.C. §499e, et seq.];

3. Taking any other action whatsoever which violates 7 U.S.C. §499e(c)(1) through (4), inclusive, and 7 U.S.C. §499b(4) [§2 of PACA].

It is further **ORDERED** that Business Entity Defendants and their officers, directors, shareholders, employees, agents, bankers, subsidiaries, successors, assignees, principals, attorneys, and persons acting in concert with them shall be and hereby are prevented from transferring, withdrawing or in any other manner removing Perishable Agricultural Commodities Act [7 U.S.C. §499e, et seq.] trust assets in the amount of $475,225.36, including funds on deposit in Business Entity Defendants' banking accounts, including but not limited to, the following

---

[2] The Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The Court will not require Plaintiffs to post a bond in light of the fact that Business Entity Defendants hold PACA trust assets belonging to Plaintiffs.

accounts: accounts held in the name of Jusgo Supermarket and/or Ztao Marketplace at American First National Bank, account number XXXXXX7867; accounts held in the name of Ztao Group Holding, LLC at American First National Bank, account number XXXXXX8316; accounts held in the name of Ztao Marketplace Distribution Center, LLC at American First National Bank, account number XXXXXX8383; and any other accounts subsequently discovered to be standing in Business Entity Defendants' name or names, either separately or jointly.

It is further **ORDERED** that in the event Business Entity Defendants lack sufficient funds to promptly deposit the sums described above, Business Entity Defendants are required to:

1. Immediately account to the Court and Plaintiffs for all assets of the PACA trust from commencement of Business Entity Defendants' business through the date of this Order, including without limitation, cash on hand and/or in banking accounts, accounts receivable, accounts payable and any other assets impressed with the PACA trust.

2. Deposit all checks, wire transfers and cash receipts received after the issuance of the Order with the Court or in the above identified First American National Bank account, which shall be frozen until there are sufficient assets set aside to pay Plaintiffs in the amount of $475,225.36.

3. File weekly with this Court satisfactory evidence of compliance with the terms of this Order.

It is further **ORDERED** that Plaintiffs and their counsel, agents, or representatives, shall have upon two-weeks notice to Business Entity Defendants, full and complete and continuing access to all of Business Entity Defendants' books and records, which shall include but not necessarily be limited to, Business Entity Defendants' accounts receivable and payable ledgers, invoices, ledgers, computer runs, bank statements and canceled checks, relating to Business Entity Defendants' business and personal financial status from commencement of Business Entity Defendants' business activities forward for the purposes of verifying Business Entity Defendants' accountings required by this Order and for enforcement of this Order. Business Entity Defendants shall, upon 48-hours notice by Plaintiffs' counsel, allow inspection and copying of the books and

records of said Business Entity Defendants by Plaintiffs or their representatives at Business Entity Defendants' place of business. Business Entity Defendants will be required to report to the Court and to Plaintiffs' counsel on a weekly basis to the amount and status of its receivables and payments received.

It is further **ORDERED** that Plaintiffs shall be entitled to depose, under oath, at reasonable times and places, upon at least 48-hours notice, Business Entity Defendants' principals, owners, directors, officers, shareholders, employees, agents and accountants concerning any matter pertaining to any accounting due pursuant to this Order, any books or records which Plaintiffs are entitled to inspect under this Order, the trust assets or any of Business Entity Defendants' business assets, and/or Business Entity Defendants' business practices, procedures or operations from commencement of Business Entity Defendants' business activities.

It is further **ORDERED** that First American National Bank release, in confidence, information to Plaintiffs' counsel about the above-described accounts, including the amounts contained in the accounts, in confidence and only to the extent necessary to verify compliance with the terms of this Order.

It is further **ORDERED** that no bond shall be required to be posted by Plaintiffs before the preliminary injunction is effective.

**IT IS SO ORDERED**.
SIGNED this 12th day of May, 2020.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE